IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: 1:25-cv-21107-JB

JONATHAN LUDWIG,

    Plaintiff,

v.

AYR WELLNESS, INC., and MERCER PARK, L.P.,

    Defendants.
_____/

**MOTION FOR DEFAULT FINAL JUDGMENT
AGAINST MERCER PARK, L.P. AS TO LIABILITY**

Plaintiff Jonathan Ludwig ("Ludwig"), by and through undersigned counsel and pursuant to this Court's March 10, 2025 Order Regarding Procedures (the "Procedure Order") [ECF No. 3], this Court's Standing Procedures Regarding Motions for Default Final Judgment (the "Standing Procedures"), and Federal Rule of Civil Procedure 55, respectfully moves for the entry of Default Final Judgment against Defendant Mercer Park, L.P. ("Mercer Park") as to liability, deferring determination on damages until final resolution against non-defaulted party, AYR Wellness, Inc. ("AYR") or in the alternative, requests an evidentiary hearing as to the amount of damages, and in support thereof state as follows:

**Factual Support for Default Final Judgment**

1. In or around October of 2021, AYR and Mercer Park formalized Ludwig's employment role in writing, offering him an Employment Agreement with Mercer Park and AYR to serve as AYR's Senior Vice President of M&A. A true and correct copy of Ludwig's Employment Agreement (the "Agreement") dated November 1, 2021, is attached as **Exhibit A**.

2. Pursuant to the Agreement, Ludwig was promised a base salary of $350,000.00 per year, an annual cash bonus, an annual stock award, and benefits. *See* Ex. A.

3. Additionally, consistent with prior promises, Ludwig was issued 100,000 shares of AYR stock which, according to the company, had a market value of $2,437,500.

4. Focused on obtaining additional shares and increasing the value of AYR, Ludwig worked diligently to exceed expectations and drive the company to meet its goals. Ludwig built an exceptionally successful strategy for AYR to apply for and win new cannabis licenses, the most cost-efficient avenue for entering attractive markets.

5. Applications submitted under Ludwig had a 100% success rate with Ayr winning licenses in five (5) states—Illinois, Ohio, Connecticut, Virginia, and New York. Ludwig also spearheaded multiple aspects of AYR's M&A activities, building an acquisition pipeline and leading diligence, documentation, and execution of eight (8) deals worth over $950 million dollars.

6. Ludwig was given multiple informal reviews praising his performance, calling him a "culture carrier" for the company. At the end of 2022, Ludwig was given a formal review which exclaimed that Ludwig had "exceeded expectations."

7. Despite his contributions, in 2022 AYR failed to compensate Ludwig in accordance with the terms of the Agreement. *See* Ex. A, ¶¶ 4(b), (c).

8. At the end of 2022 and beginning of 2023, Ludwig advised Defendants that he did not receive appropriate bonus compensation or shares pursuant to the Agreement. In response, Ludwig was advised that these requests had to be made through AYR's Board of Directors and could not be addressed until the next cycle.

9. In early 2024, following the directions given to him, Ludwig once again raised the issue of his compensation.

10. Ignoring these requests and without conducting any performance review, Ludwig received a bonus for calendar year 2023 which was 61% lower than the minimum bonus guaranteed in Ludwig's Agreement.

11. In addition to the improper bonus, Ludwig was promised a $50,000 merit award in company shares that he never received.

12. Near the end of 2024, Ludwig was advised that he was going to be terminated because the new interim CEO of AYR, Steve Cohen, would no longer be pursuing projects within Ludwig's purview.

13. Ludwig's employment can be terminated pursuant to paragraph 5 of the Agreement. *See* Ex. A., ¶ 5.

14. Termination "without cause" entitles Ludwig to certain remuneration pursuant to the Agreement. *See id*., ¶ 5(d). Specifically, Defendants are required to pay Ludwig Final Compensation[1], a prorated bonus, Benefit Continuation, immediate vesting of Ludwig's equity, and "an amount equal to two (2) times the sum of the current annual Base Salary and the greater of the Target Bonus amount for the current year or the actual Annual Bonus paid for the full calendar year immediately preceding the calendar year in which such termination occurs (the "Termination Compensation")." *See id*., ¶ 5(d).

---

[1] "Final Compensation" includes "(i) the Base Salary earned but not paid through the date of termination (to be paid in accordance with the Company's normal payroll policies or at such earlier time as required by applicable law), (ii) the value of any vacation time earned but not used through the date of termination (to be paid in accordance with the Company's policies and applicable law), (iii) any Annual Bonus earned under Section 4(b) with respect to the calendar year immediately preceding the calendar year in which such termination occurs, but only to the extent unpaid as of the date of termination (with any such earned Annual Bonus to be paid at the same time as if no such termination had occurred), and (iv) any business expenses incurred by the Executive but unreimbursed as of the date of termination, provided that such expenses are reimbursable under Company policy (with such expenses to be reimbursed in accordance with the Company's expense reimbursement policies as in effect from time to time)." Ex. A, ¶ 5(a).

15. On December 30, 2024, Ludwig asked for his Final Compensation, Termination Compensation, prorated bonus, vested equity, and Benefit Continuation if AYR intended to terminate his employment under his agreement.

16. In response, on January 10, 2025, Defendants sent Ludwig a document titled for cause termination letter ("Termination Letter") advising Ludwig that he was not entitled to his Final Compensation, Termination Compensation, prorated bonus, vested equity, or Benefit Continuation pursuant to the terms of the Agreement because he was allegedly being terminated for cause.

17. These reasons "for cause" termination are not a recognized basis within the "for cause" provisions of the Agreement. Neither sections 5(c)(iv), (vi), or (vii), which the Termination Letter explicitly identify, nor any other subsection, can reasonably be interpreted to cover any of the alleged bases for cause listed in the Termination Letter.

## Memorandum of Law

18. On March 10, 2025, Ludwig filed the Complaint [ECF No. 1]. *See* Declaration of Annie D. Rosenthal, Esq. ("Rosenthal Dec."), ¶ 5, attached as **Exhibit B**.

19. On March 12, 2025, Mercer Park was served with the Summons, Complaint, and Civil Cover Sheet.  *See id.*, ¶ 6, and Exhibit 1 attached thereto.

20. Mercer Park's deadline to respond to the Complaint was April 2, 2025. Mercer Park failed to file a response to the Complaint or otherwise appear. *See id.*, ¶ 7.

21. This Court's Procedure Order [ECF No. 3] provides that "[i]n the event a served Defendant does not appear in this action, the Plaintiff(s) shall file a Motion for Clerk's Default within seven days of the deadline for the Defendant to answer."

22. Therefore, on April 9, 2025, Ludwig filed a Motion for Clerk's Default [ECF No. 10], and that same day, the clerk of court entered Clerk's Default against Mercer Park [ECF No. 11]. *See id.*, ¶¶ 8-9, and Exhibits 2 and 3 attached thereto.

23. This Court's Procedure Order [ECF No. 3] and the Standing Procedures provide that "[w]ithin seven (7) days of the entry of a Clerk's Default, Plaintiff(s) must file a Motion for Default Final Judgment."

24. Ludwig's Complaint asserts two claims: one for breach of contract (Count I) and one for breach of the implied covenant of good faith and fair dealing (Count II). *See* ECF No. 1; *see also* Rosenthal Dec., ¶ 10. Because Mercer Park defaulted, it admitted Ludwig's well-plead allegations of fact. *See Sec. & Exch. Comm'n v. Caputo*, No. 22-CV-61693-JEM, 2023 WL 3740926, at *3 (S.D. Fla. May 17, 2023) (J., Becerra), *report and recommendation adopted*, No. 22-61693-CIV, 2023 WL 3737711 (S.D. Fla. May 31, 2023) *Lary v. Trinity Physician Fin. & Ins. Services*, 780 F.3d 1101, 1106 (11th Cir. 2015).

25. "Under Florida law, the elements of breach of contract are: (1) the existence of a contract, (2) a breach thereof, and (3) damages flowing from the breach." *Wistar v. Raymond James Fin. Services, Inc.*, 365 F. Supp. 3d 1266, 1269 (S.D. Fla. 2018).

26. Ludwig is entitled to default final judgment for Count I (breach of contract) against Mercer Park based on the following well-plead (and admitted) allegations:

   a. Ludwig, Mercer Park, and AYR are parties to the Agreement which is a valid and enforceable contract. *See* Ex. A.

   b. Pursuant to the Agreement, in the event Defendants terminate Ludwig's employment without cause, Mercer Park and AYR are required to pay Ludwig Final

      Compensation, a prorated bonus, Benefit Continuation, immediate vesting of Ludwig's equity, and Termination Compensation. *See id.*, ¶ 5(d).

  c. Notwithstanding the conclusions in the Termination Letter, AYR terminated Ludwig's employment without cause.

  d. Despite the express terms of the Agreement, Mercer Park and AYR did not pay Ludwig the required Final Compensation, Termination Compensation, prorated bonus, vested equity, or continued his benefits following their termination of his employment without cause.

  e. As a direct result of Mercer Park and AYR's breach of the Agreement, Ludwig has been damaged.

27. "A covenant of good faith and fair dealing is implied in every contract." *Martorella v. Deutsche Bank Nat. Tr. Co.*, 931 F. Supp. 2d 1218, 1225 (S.D. Fla. 2013). Generally, a claim for breach of the implied covenant cannot be maintained in absence of an alleged breach of an express contractual term. *See id.* (citing *Centurion Air Cargo, Inc. v. United Parcel Svc. Co.*, 420 F.3d 1146, 1152 (11th Cir. 2005)). "The covenant applies, however, when the propriety of the conduct is not resolved by the express terms of the contract, and its application does not contradict the express terms of the contract." *Id.* "Where, as here, a contract vests a party with discretion, the implied duty of good faith and fair dealing attaches as a gap-filling default rule." *Id.* In filling the gaps, the covenant of good faith and fair dealing imposes a duty upon the party invested with discretion to act in a commercially reasonable manner that satisfies the reasonable expectations of the contracting parties. *See id.* at 1225-26.

28. Ludwig is entitled to default final judgment for Count II (implied covenant of good faith and fair dealing) against Mercer Park based on the following well-plead (and admitted) allegations:

   a. Ludwig, Mercer Park, and AYR are parties to the Agreement which is a valid and enforceable contract.

   b. Ludwig performed all of his obligations under the Agreement.

   c. The conditions precedent required for Ludwig to receive his Annual Cash Bonus Compensation and Annual Stock Award have occurred. *See* Ex. A, ¶ 4(b), (c).

   d. Implicit in the Agreement is an implied covenant of good faith and fair dealing.

   e. Instead of acting in good faith in fulfilling its obligations under the Agreement, Mercer Park and AYR conditioned payments of bonuses and the issuance of stock to the financial performance of AYR which was not consistent with the Ludwig's reasonable expectations.

   f. These decisions unfairly frustrate the common purpose of the Agreement that Ludwig would receive certain bonuses and stock awards in exchange for his providing services.

   g. As a direct and proximate result of Mercer Park and AYR's breach of the covenant of good faith and fair dealing implicit in the Agreement, Ludwig has been damaged.

29. Therefore, Ludwig respectfully requests the Court enter default final judgment against Mercer Park as to liability for Counts I and II.

30. Moreover, this Court's Standing Procedures require plaintiffs to file a notice of joint liability if there are multiple defendants, therefore Plaintiff has attached to this Motion as **Exhibit C** and is simultaneously filing a Notice of Joint Liability as to co-Defendant AYR. *See* Standing

Procedures, ¶ 3 (citing 10A Charles Alan Wright et al., Federal Practice and Procedure § 2690 (4th ed. 2021)).

31. Accordingly, and to avoid inconsistent judgments, determination as to damages should be deferred until resolution of the case against the non-defaulted party, AYR. *See* 10A Charles Alan Wright et al., Federal Practice and Procedure § 2690 (4th ed. 2021).

WHEREFORE, Plaintiff Jonathan Ludwig respectfully requests that this Court enter default final judgment as to liability against Defendant Mercer Park, L.P., deferring a determination as to the amount of damages until final resolution against co-Defendant AYR Wellness, Inc. or in the alternative, schedule an evidentiary hearing to determine the amount of damages, and grant such other and further relief as this Court deems just and proper.

Dated: April 16, 2025

Respectfully submitted,

**MARK MIGDAL & HAYDEN**
80 S.W. 8th Street, Suite 1999
Miami, Florida 33130
Telephone: (305) 374-0440

By: *s/ Annie D. Rosenthal*
   Josh A. Migdal, Esq.
   Florida Bar No. 19136
   Annie D. Rosenthal, Esq.
   Florida Bar No. 1031335
   josh@markmigdal.com
   annie@markmigdal.com
   eservice@markmigdal.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing document electronically on the Court's CM/ECF docket on April 16, 2025 which served same electronically upon all counsel of record.

By: *s/ Annie D. Rosenthal*
   Annie D. Rosenthal, Esq.